45 P.3d 1103 (2002)
111 Wash.App. 511
In re the Application for Relief from Personal Restraint of Robert M. WAGGY, Petitioner.
State of Washington, Respondent,
v.
Robert M. Waggy, Appellant.
Nos. 19706-9-III, 19707-7-III.
Court of Appeals of Washington, Division 3, Panel Two.
May 7, 2002.
*1104 William D. Edelblute, Spokane, for Appellant.
Andrew J. Metts, III, Deputy Prosecuting Attorney, Spokane, for Respondent.
KATO, J.
Robert M. Waggy seeks either the removal of sentence conditions or a withdrawal of his guilty pleas to one count of third degree child rape and one count of second degree child molestation. He contends he was not adequately informed that post-incarceration community placement would limit his contact with his daughter and adult women and require him to make progress in treatment. He raises several other issues in his pro se supplemental brief and personal restraint petition. We affirm the sentence and dismiss the petition.
Appearing pro se, Mr. Waggy pleaded guilty to third degree child rape and second degree child molestation. As part of a plea agreement, the State dismissed one count of third degree child rape but refused to recommend a Special Sex Offender Sentencing Alternative (SSOSA). The superior court informed Mr. Waggy at the guilty plea hearing that it was not required to follow anyone's sentencing recommendations; his written guilty plea statement also advised him of that fact.
The written guilty plea statement provided in part: "If this crime is a sex offense, the court will order me to serve at least three years of community custody. During the period of community placement, community custody, or community supervision, I will be under the supervision of the Department of Corrections, and I will have restrictions placed on my activities." Clerk's Papers (CP) at 16. At the guilty plea hearing, the court read this provision to Mr. Waggy and asked if he understood it. Mr. Waggy replied, "Yes." Report of Proceedings at 10.
At the sentencing hearing, the prosecutor explained that the State was opposing SSOSA because (1) the SSOSA evaluator diagnosed *1105 Mr. Waggy as a pedophile and a poor candidate for treatment; (2) Mr. Waggy had a history of domestic violence, substance abuse, and significant mental health issues; (3) the abuse of the victim was prolonged and violent; (4) the SSOSA evaluator characterized Mr. Waggy as aggressive and violent; (5) the victim opposed SSOSA; and (6) the presentence investigation report writer also concluded that Mr. Waggy was dangerous and violent.
The court denied Mr. Waggy's request for a SSOSA based on his violence, his danger to the victim and the community, his mental illness, and his lack of amenability to treatment. The court sentenced him to 34 months for the child rape conviction and 41 months for the child molestation conviction, to be served concurrently. The court also ordered him to serve three years of community placement with the following conditions (among others):
(11) That he has no direct or indirect contact with [D] or [AB] for the statutory maximum of his sentence.
(12) That he has no contact with minors, his biological daughter, [MW], included, unless in the presence of a chaperone who has been approved by his community corrections officer and/or therapist and who is aware of the offense behavior. Contact with [MW] will occur in accordance with the requirements of the Division of Children and Family Services and/or her guardian.
(13) That he notifies the community corrections officer of any romantic/sexual relationships with women so the community corrections officer can ensure that the woman is aware of his criminal history.
CP at 25-26.
Mr. Waggy then moved to vacate the sentence, arguing (1) the sentence violated the plea agreement; (2) the prosecutor provided false evidence to the court; (3) the court denied him the opportunity to refute the prosecutor's evidence; (4) a detective broke a promise not to prosecute him; (5) the sentence violated the Sentencing Reform Act of 1981(SRA); (6) the sentence would psychologically damage him and constituted cruel and unusual punishment; and (7) the sentence punished his minor daughters. Mr. Waggy also asked the court to appoint an attorney to assist him with the motion.
Through counsel, Mr. Waggy moved to withdraw his guilty plea based on the court's failure to inform him that his parental rights would be terminated. Counsel argued that the condition restricting Mr. Waggy's contact with minors, including his daughters, constituted a direct consequence of the plea and therefore Mr. Waggy should have been advised of such a possibility. The court denied the motion, noting that Mr. Waggy reasonably could have inferred from applicable statutes that his parental rights would be affected by the guilty plea.
Mr. Waggy's court-appointed attorney on appeal filed an Anders[1] brief, and Mr. Waggy filed both a pro se supplemental brief and a personal restraint petition. Concluding that at least one of the issues appeared to have arguable merit, this court's commissioner referred the consolidated cases to a panel of judges. A different attorney has been appointed to represent Mr. Waggy.
We first consider whether Mr. Waggy's guilty pleas were involuntary because he was not informed of the specific community placement conditions at the time of his pleas. To satisfy the requirements of due process, a guilty plea must be voluntary and intelligent. State v. Ross, 129 Wash.2d 279, 284, 916 P.2d 405 (1996).
A defendant need not be informed of all possible consequences of a plea but rather only direct consequences. [State v. Barton, 93 Wash.2d 301, 305, 609 P.2d 1353 (1980) ]. The court has distinguished direct from collateral consequences by "`whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment'." Barton, 93 Wash.2d at 305, [609 P.2d 1353] (quoting Cuthrell v. Director, Patuxent Inst, 475 F.2d 1364, 1366 (4th Cir.), cert. *1106 denied, 414 U.S. 1005, [94 S.Ct. 362, 38 L.Ed.2d 241] (1973)).
Ross, 129 Wash.2d at 284, 916 P.2d 405.
The State bears the burden of demonstrating that a guilty plea is valid. Id. at 287, 916 P.2d 405. In general, "the remedy for an involuntary plea is to permit the defendant to elect to either withdraw the guilty plea or to specifically enforce the plea agreement." State v. Hurt, 107 Wash.App. 816, 832, 27 P.3d 1276 (2001); see State v. Walsh, 143 Wash.2d 1, 8-9,17 P.3d 591 (2001).
In Ross, our Supreme Court held that mandatory community placement was a direct consequence of a guilty plea, of which a defendant must be informed. Ross, 129 Wash.2d at 284-87, 916 P.2d 405. In this case, Mr. Waggy asks the court to extend Ross to require that a defendant be informed, not just of the community placement requirement, but also of the specific conditions to be associated with the community placement. While Ross did not address this question specifically, it quoted with approval the standard guilty plea form provided in CrR 4.2(g), which contains language similar in all pertinent respects to Mr. Waggy's written guilty plea statement. See CrR 4.2(g)(6)(f); Ross, 129 Wash.2d at 282-83, 916 P.2d 405 (characterizing standard form as "appropriate"). Therefore, Ross impliedly held that a guilty plea is valid if the defendant is informed that he will be required to serve a term of community placement but is not informed of the specific restrictions to be associated with that placement.
Here, Mr. Waggy was on notice, through RCW 9.94A.700(4)-(5), that a court was required or optionally could include various conditions on his activities during his term of community placement. Moreover, while the community placement requirement itself is a direct consequence of the guilty plea, conditions imposed during that placement have no effect on the range of the punishment. They thus are not direct consequences of a guilty plea.
Mr. Waggy nevertheless contends he should have been informed that he would face restrictions on important constitutional rights. He contends in part that the conditions violate his right to affiliation with his children. See In re Welfare of Sumey, 94 Wash.2d 757, 762, 621 P.2d 108 (1980). However, "[a] defendant's constitutional rights during community placement are subject to the infringements authorized by the [Sentencing Reform Act of 1981]." In re Pers. Restraint of Caudle, 71 Wash.App. 679, 683, 863 P.2d 570 (1993) (Sweeney, J., concurring). RCW 9.94A.700(5)(b) expressly authorizes a court to impose limitations on an offender's contact with a victim or a specific class of persons. Moreover, preventing harm to minor children by a convicted sex offender is a compelling state interest that justifies limitations on the offender's freedoms. State v. Letourneau, 100 Wash.App. 424, 439, 997 P.2d 436 (2000).
Mr. Waggy also contends the condition requiring him to notify the corrections officer of relationships with adult women violates his First Amendment right of free association. See Caudle, 71 Wash.App. at 683, 863 P.2d 570 (Sweeney, J., concurring) (quoted in Ross, 129 Wash.2d at 286-87, 916 P.2d 405). But an offender's freedom of association may be limited if the restriction is "`reasonably necessary to accomplish the essential needs of the state and public order.'" State v. Riley, 121 Wash.2d 22, 37-38, 846 P.2d 1365 (1993) (quoting Malone v. United States, 502 F.2d 554, 556 (9th Cir.1974), cert. denied, 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975)). Here, because the sentencing court's condition does not limit Mr. Waggy's relationships with adults, it does not directly infringe on his freedom of association. The condition obviously affects Mr. Waggy's privacy, but our Supreme Court has held that there is no right to confidentiality of conviction records and that the State has a legitimate interest in informing the public about "potentially dangerous individuals." In re Pers. Restraint of Meyer, 142 Wash.2d 608, 620-21, 16 P.3d 563 (2001). The conditions here were legitimate limitations on Mr. Waggy's freedoms resulting from his criminal behavior. He was fully informed of the community placement requirement, of which the limitations were a part. Under Ross, Mr. Waggy's plea was voluntary and intelligent. The guilty plea was valid.
Finally, we briefly address Mr. Waggy's pro se supplemental brief and his personal *1107 restraint petition. The pro se brief is a list of references to the record and Mr. Waggy's denials. Factual questions cannot be considered on appeal. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990); see State v. McFarland, 127 Wash.2d 322, 335, 899 P.2d 1251 (1995) (appellate court will not consider matters outside trial record). The claims in his pro se brief thus are impossible to evaluate.
Mr. Waggy's personal restraint petition also makes several factual allegations that are not substantiated by the record. A personal restraint petitioner has the burden of proving constitutional error that results in actual prejudice or nonconstitutional error that results in a miscarriage of justice. In re Pers. Restraint of Cook, 114 Wash.2d 802, 813, 792 P.2d 506 (1990). If a petition is based on matters outside the appellate record, a petitioner must show that he has "competent, admissible evidence" to support his arguments. In re Pers. Restraint of Rice, 118 Wash.2d 876, 886, 828 P.2d 1086, cert. denied, 506 U.S. 958, 113 S.Ct. 421, 121 L.Ed.2d 344 (1992). Also, "a petitioner must show that more likely than not he was prejudiced by the error. Bare allegations unsupported by citation of authority, references to the record, or persuasive reasoning cannot sustain this burden or proof." State v. Brune, 45 Wash.App. 354, 363, 725 P.2d 454 (1986), review denied, 110 Wash.2d 1002 (1988). A petition that fails to meet this basic level of proof and argument may be dismissed summarily. Id.
Mr. Waggy's petition contains no citation to the record or to any legal authority. Most of his allegations are unsupported by any facts, either in the petition itself or from the appellate record. We have no basis for judging Mr. Waggy's allegations or their prejudicial effect. The petition therefore is dismissed.
The sentence is affirmed, and the personal restraint petition is dismissed.
WE CONCUR: BROWN, C.J., and SCHULTHEIS, J.
NOTES
[1] Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).