[No. 12295-6-III.    Division Three.    March 18, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. TROY S. PETERSON, *Appellant*.

*Daniel M. Arnold,* for appellant.

*Gary A. Riesen, Prosecuting Attorney,* for respondent.

SHIELDS, C.J. — Troy Peterson appeals a superior court finding of noncompliance with a condition of postrelease community placement and its order to serve 60 days in the county jail. We set aside the finding and order.

Mr. Peterson pleaded guilty to one count of rape in the second degree and one count of burglary in the first degree on October 3, 1988. The Chelan County Superior Court sentenced him to 41 months in prison and 1 year of community placement. The court imposed a condition on Mr. Peterson's community placement: "The defendant shall participate in crime related treatment or counseling services as directed by his corrections officer once he is released from prison".

Mr. Peterson was released from prison on December 1, 1991, and placed in the Aberdeen area. His corrections officer directed him to see Dr. Michael Barsanti, an Olympia-based psychologist specializing in sexual deviancy treatment. Mr. Peterson does not dispute that Dr. Barsanti was the only qualified specialist in the region.

Mr. Peterson had attended sex offender treatment programs twice previously. The year before the 1988 rape, while in the juvenile detention system, he completed a sex offender treatment program at the Maple Lane Correctional Facility. A year after the rape, while in the state prison system, he attended the Twin Rivers Sex Offender Treatment Program for 4 months. However, he was terminated from this program because of aggressive behavior and threats.

Mr. Peterson made the 60-mile trip to Olympia and appeared for his appointment with Dr. Barsanti on January 23, 1992. At that meeting, Mr. Peterson said that he came to see the doctor "to let the people know I'm ok." "I did my time, I'm staying away from booze and drugs, and dealing with self-esteem." "I think I got rid of my sex problem when I went to Maple Lane." "I don't have a problem." "I think my problems disappeared in the joint." "I felt coerced into doing the burglary and rape. The other guy had threatened me."

Based on that meeting, Dr. Barsanti declined to accept him into treatment with his outpatient therapy group. Dr. Barsanti gave the following reasons for his decision: Mr. Peterson had committed violent sex crimes, had been terminated from the Twin Rivers Sex Offender Treatment Program because of aggression and threats, and refused to admit he had a sex deviance problem. Three weeks later, Mr. Peterson was arrested in Wenatchee for failing to enter Dr. Barsanti's treatment program, thus failing to comply with a condition of community placement.

Mr. Peterson first contends placement in a sex offender treatment program is not an authorized condition of community placement under RCW 9.94A.120(8). He argues RCW 9.94A.120(8) does not by its terms authorize coerced performance of affirmative conduct by an offender. Because RCW 9.94A.120(8)(c)(iii) does not define "crime-related treatment or counseling", he argues the interpretation of "crime-related prohibitions" in *State v. Parramore*, 53 Wn. App. 527, 529-30, 768 P.2d 530 (1989) should apply. He further points out he was not sentenced under the special sexual offender sentencing alternative (SSOSA), which allows first-time sexual offenders to be placed in treatment, if they are amenable to it, as an alternative to prison. RCW 9.94A.120(7).

Mr. Peterson properly notes that this court must give effect to the purposes of the statute as a whole. *State v. Stannard*, 109 Wn.2d 29, 36, 742 P.2d 1244 (1987). RCW 9.94A.120(8) is written in terms of "community placement" but does not define that term. However, RCW 9.94A.030(7) defines a similar term, "community supervision", relating to first offenders, as:

> (7) "Community supervision" means a period of time during which a convicted offender is subject to crime-related prohibitions and other sentence conditions imposed by a court pursuant to this chapter or RCW 46.61.524.

Although a "prohibition" cannot, by definition, require affirmative conduct, "other sentence conditions" can. The relevant

"other sentence conditions", which apply to first offenders, are set out in RCW 9.94A.120(5) as:

> (a) Devote time to a specific employment or occupation;
> (b) Undergo *available* outpatient treatment for up to two years, or inpatient treatment not to exceed the standard range of confinement for that offense;
> (c) Pursue a prescribed, secular course of study or vocational training;
> (d) Remain within prescribed geographical boundaries and notify the court or the community corrections officer prior to any change in the offender's address or employment;
> (e) Report as directed to the court and a community corrections officer; or
> (f) Pay all court-ordered legal financial obligations as provided in RCW 9.94A.030 and/or perform community service work.

(Italics ours.) Thus, the statute does give authorization to require an offender on community placement to undergo *available* outpatient treatment. RCW 9.94A.120(5)(b). Here, that outpatient treatment was not available to Mr. Peterson because he was considered not amenable to treatment.

Mr. Peterson next contends that even if receiving treatment is a valid condition, he did not willfully violate the condition of community placement. He drove 60 miles to keep the appointment and was open with the doctor about his feelings; it was Dr. Barsanti who declined to accept him. He also argues that the community corrections officer made no effort to find alternative crime-related treatment for him.

The State correctly points out that the statute governing noncompliance with a condition of a sentence requires only a preponderance of the evidence to show a failure to comply. RCW 9.94A.200(2)(b). Once the State shows a failure to comply, the burden shifts to the offender to show cause why he should not be punished. RCW 9.94A.200(2)(a). Contrary to Mr. Peterson's position, willfulness is a factor only in modifying orders regarding payment of legal financial obligations and community service obligations. RCW 9.94A.200(2)(c). Neither of those obligations is involved here.

Were willful noncompliance the issue, it would have been necessary for the State to show an ability to comply with the

condition. *See State v. Hayes*, 56 Wn. App. 451, 453, 783 P.2d 1130 (1989). The State could not have shown ability to comply in light of Dr. Barsanti's refusal to accept Mr. Peterson for treatment. The refusal placed Mr. Peterson in the position of being unable to comply. However, at issue is simply whether Mr. Peterson complied with the condition of his community placement.

The State's motion alleged Mr. Peterson failed to comply "[b]y failing to enter into a sex offender treatment program on January 23, 1992, in Thurston County." However, entry into Dr. Barsanti's outpatient sex offender treatment program was not the condition the sentence imposed. Rather, the condition was to "participate in crime related treatment or counseling *services*", as authorized by statute. (Italics ours.) If the corrections officer directs entry into a particular sex offender treatment *program* which will not accept the offender, no volitional act of noncompliance has occurred, from the offender's standpoint, under the sentence condition as imposed. Thus, the State has not shown Mr. Peterson's failure to comply.

Mr. Peterson finally argues that RCW 9.94A.120(8), when read with RCW 9.94A.120(7)(a)(i), prohibits imposition of a treatment condition unless the court first finds the offender is amenable to treatment. The argument, on the facts before us, is immaterial. RCW 9.94A.120(7)(a)(i) is a special provision for first-time nonviolent sex offenders who may avoid jail or prison time if they qualify for SSOSA. Use of SSOSA requires an evaluation of amenability to treatment and relative risk to the community. Only if a first-time nonviolent sex offender is found amenable to treatment, and other considerations are met, will the offender qualify for SSOSA.

Mr. Peterson is not a first-time nonviolent sex offender; his relative risk to the community has been measured by a term in prison; and his nonamenability to treatment makes outpatient treatment unavailable. Available alternative treatment or counseling services have not been offered or explored. This is precisely the purpose of RCW 9.94A.120-(8)(d). The Department of Corrections should have recom-

mended a modification of its condition to treatment which was available.[1]

The trial court's sentencing authority cannot exceed the authority conferred by statute. *In re Carle*, 93 Wn.2d 31, 33, 604 P.2d 1293 (1980). It was beyond the authority of the court to punish Mr. Peterson for failing to gain admission to a particular sex offender treatment program. The court's finding of noncompliance is set aside and the order to serve 60 days in the county jail is reversed.

MUNSON and THOMPSON, JJ., concur.

---

[1]This is not to say Mr. Peterson does not appear to pose a risk to the community. Our holding simply states Mr. Peterson must be dealt with according to law.