[No. 26217-7-II. Division Two. October 25, 2002.]

*In the Matter of the Detention of* CASPER WILLIAM ROSS, *Appellant.*

114

*Pattie Mhoon*, for appellant (appointed counsel for appeal).

*Christine O. Gregoire, Attorney General*, and *Todd R. Bowers, Assistant*, for respondent.

BRIDGEWATER, J. — Casper William Ross appeals the trial court's denial of his motion to vacate a court order requiring his involuntary civil commitment as a sexually violent predator under chapter 71.09 RCW. Ross asserts that the State denied him equal protection and due process of law when it did not prove, before committing him, that Ross had not, in good faith, volunteered for treatment. We hold that the involuntary civil commitment procedures afforded Ross

due process, and that Ross was not denied equal protection because the State's interest in protecting society from sexually violent predators is rationally related to the lack of a volunteer treatment option in the sexually violent predator statutes. We affirm.

In 1986, the State convicted Ross of first degree child rape. In early 1997, Ross underwent sexual deviancy treatment at Twin Rivers Correction Center. A September 1997 Twin Rivers report indicated that Ross had a high risk to reoffend. In January 1998, Ross completed treatment at Twin Rivers and was set to be released on January 3, 1998, after having served a 194-month sentence.

On January 5, 1998, the State petitioned the trial court to involuntarily commit Casper Ross as a sexually violent predator under chapter 71.09 RCW. The trial court determined that probable cause existed to believe that Ross was a sexually violent predator. On June 10, a jury found Ross to be a sexually violent predator under chapter 71.09 RCW. The trial court subsequently committed Ross to the Department of Social and Health Services' custody.

On April 20, 2000, while still committed, Ross, acting pro se, filed a motion to vacate the trial court's commitment order. He alleged that the trial court committed constitutional error by not requiring the State to show that he did not, in good faith, volunteer for treatment before ordering him involuntarily committed as a sexually violent predator. He argued that he voluntarily submitted to inpatient treatment at Twin Rivers in 1997, and that when the State petitioned for involuntary civil commitment, he had plans to continue this treatment. Thus, Ross argued the State failed to establish by a preponderance of the evidence that he was unfit for voluntary treatment.

It is undisputed that after serving his 194-month sentence for first degree child rape, Ross voluntarily availed himself of additional sexual deviancy treatment at Twin Rivers. The sole question on appeal is whether the trial court violated Ross' due process and equal protection rights by not requiring the State to demonstrate, by a preponderance of the evidence, that he did not, in good faith, volun-

teer for additional treatment as required under RCW 71.05.230(2) of the civil commitment statutes. RCW 71-.05.230 provides in pertinent part as follows:

> **Procedures for Additional Treatment.** A person detained for seventy-two hour evaluation and treatment may be detained for not more than fourteen additional days of involuntary intensive treatment or ninety additional days of a less restrictive alternative to involuntary intensive treatment if the following conditions are met:
>
> . . . .
>
> (2) The person has been advised of the need for voluntary treatment and the professional staff of the facility has evidence that he or she has not in good faith volunteered; . . . .

Although RCW 71.05.230 is a civil commitment statute, it is not included in the sexually violent predator chapter. The sexually violent predator statutes do not require the trial court to make the good faith finding at issue in this case. Chapter 71.09 RCW. The determination arises only under RCW 71.05.230 when the State seeks additional involuntary intensive treatment of a person detained for a 72-hour evaluation and treatment. Thus, this court must determine whether distinguishing, with regard to the good faith determination, between those civilly committed for a mental illness and those committed as sexually violent predators violates Ross' due process and equal protection rights.

## I. Equal Protection

The constitutions of the United States and of Washington guarantee equal protection under the law. U.S. Const. amend XIV, § 1; Wash. Const. art. I, § 12. Equal protection does not require that all persons be dealt with identically; it requires only that distinctions have some relevance to the purpose for which the classification is made. *In re Det. of Turay*, 139 Wn.2d 379, 409-10, 986 P.2d 790 (1999), *cert. denied*, 531 U.S. 1125 (2001). We apply rational basis scrutiny when reviewing an equal protection challenge to the civil commitment statutes. *In re Det. of*

*Brooks*, 145 Wn.2d 275, 288, 36 P.3d 1034 (2001); *see also Turay*, 139 Wn.2d at 410 (courts have applied the rational relationship test to the statutes creating differing classes of persons for purposes of involuntary commitment statutes). Under rational basis scrutiny, a classification does not violate the equal protection clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. *Brooks*, 145 Wn.2d at 288. The classification must rest on grounds relevant to the achievement of legitimate State objectives. *Brooks*, 145 Wn.2d at 288. To overcome the strong presumption of constitutionality, the classification must be purely arbitrary. *Brooks*, 145 Wn.2d at 288. The burden falls on Ross, the party challenging the classification, to show that the classification is arbitrary. *See Turay*, 139 Wn.2d at 410.

 The State has a legitimate interest in protecting the public from sexually violent predators who are at a high risk to commit other predatory acts of sexual violence and are in need of long-term treatment. The legislature enacted chapter 71.09 RCW because the existing involuntary commitment statutes, chapter 71.05 RCW, did not adequately protect the public.

The legislature expressed its reasons for treating sexually violent predators differently in its findings, which provide as follows:

> The legislature finds that a small but extremely dangerous group of sexually violent predators exist who do not have a mental disease or defect that renders them appropriate for the existing involuntary treatment act, chapter 71.05 RCW, which is intended to be a short-term civil commitment system that is primarily designed to provide short-term treatment to individuals with serious mental disorders and then return them to the community. In contrast to persons appropriate for civil commitment under chapter 71.05 RCW, sexually violent predators generally have antisocial personality features which are unamenable to existing mental illness treatment modalities and those features render them likely to engage in sexually

violent behavior. The legislature further finds that sex offenders' likelihood of engaging in repeat acts of predatory sexual violence is high. The existing involuntary commitment act, chapter 71.05 RCW, is inadequate to address the risk to reoffend because during confinement these offenders do not have access to potential victims and therefore they will not engage in an overt act during confinement as required by the involuntary treatment act for continued confinement. The legislature further finds that the prognosis for curing sexually violent offenders is poor, the treatment needs of this population are very long term, and the treatment modalities for this population are very different than the traditional treatment modalities for people appropriate for commitment under the involuntary treatment act.

Former RCW 71.09.010 (2000).

■ In *In re Pers. Restraint of Young*, 122 Wn.2d 1, 26, 857 P.2d 989 (1993), our Supreme Court determined that the State had a compelling interest in treating sexually violent predators and protecting society from a sexually violent predator's high risk of reoffending. Later, in *Brooks*, our Supreme Court agreed with its earlier holding in *Young* that "there are good reasons for treating SVPs [sexually violent predators] differently from mentally ill people because SVPs are generally more dangerous to others than are the mentally ill." *Brooks*, 145 Wn.2d at 289 (citing *Young*, 122 Wn.2d at 44-45). Thus, the court in *Brooks* found that the State had a legitimate purpose for treating sexually violent predators differently from those committed under chapter 71.05 RCW. *Brooks*, 145 Wn.2d at 289.

Ross argues that there is no rational reason for the State not to show that a potential sexually violent predator detainee has not, in good faith, volunteered for treatment as it is required to do when seeking additional treatment of a mentally ill detainee under chapter 71.05 RCW. However, relying on our Supreme Court's view and the legislature's

express findings, the State indeed has a legitimate interest in protecting the public from sexually violent predators and in placing sexually violent predators in intensive inpatient treatment regardless of whether they volunteer or resist treatment.

In addition, the distinction between mentally ill detainees under chapter 71.05 RCW and sexually violent predators with regard to the volunteering-in-good-faith-for-treatment determination is rationally related to that interest. Detainees with mental disorders, as defined under chapter 71.05 RCW, are not necessarily committed because they will commit an offense or have committed an offense. Sexually violent predators, however, have already committed or been charged with committing a sexually violent offense and have a high risk of committing another sexually violent offense. The statutory definition of a sexually violent predator demonstrates this. RCW 71.09.020(16). It provides as follows:

> any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility.

RCW 71.09.020(16).

If we accept Ross' position that sexually violent predators should be allowed to first volunteer for treatment, then we must also accept the consequence that a sexually violent predator could discharge himself from sexual deviance treatment and careful monitoring at any time. *See* RCW 71.05.050 ("Any person voluntarily admitted for inpatient treatment to any public or private agency shall be released immediately upon his or her request."). Volunteering for treatment would not guarantee a sexually violent predator's participation and follow through with treatment; nor would it prevent him from reoffending, which by definition he is at a high risk of doing. Under Ross' position, before a sexually violent predator could be committed, he could potentially volunteer for treatment, leave without notice,

and commit another sexually violent offense. This is a result the legislature seeks to avoid.

Thus, the State has a legitimate interest in protecting society from sexually violent predators who are at a high risk to commit other sexually violent crimes and are in need of long-term treatment. This interest is rationally related to the lack of a volunteer treatment option in the sexually violent predator statutes and justifies the disparate treatment between the mentally ill and sexually violent predators. Finding no equal protection violation in not applying the good faith determination found in RCW 71.05.230(2) to sexually violent predators, we reject Ross' equal protection challenge.

## II. Due Process

Ross also contends that the failure to incorporate the good faith determination found in RCW 71.05.230(2) into the sexually violent predator statutes violates his right to due process. He argues that a detainee who volunteers in good faith to treatment does not adversely affect public safety and that not requiring the State to show that a potential detainee has not volunteered for treatment denies the detainee due process.

"Both the Federal and Washington Constitutions provide that no person may be deprived of life, liberty, or property without due process of law." *In re Det. of Davis*, 109 Wn. App. 734, 743, 37 P.3d 325 (2002). Due process requires the government to treat its citizens in a fundamentally fair manner. *Valley View Indus. Park v. City of Redmond*, 107 Wn.2d 621, 636, 733 P.2d 182 (1987). The purpose of due process of law is to protect the individual from the arbitrary exercise of government powers. *State v. Cater's Motor Freight Sys.*, 27 Wn.2d 661, 667, 179 P.2d 496 (1947). Consistent with due process protections, a person may not be involuntarily committed unless there is " 'a showing that the person is dangerous to the community.' " *Davis*, 109 Wn. App. at 743 (quoting *Young*, 122 Wn.2d at

31). Procedural due process requires notice and an opportunity for a hearing before the government deprives a person of a protected interest. *See Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 224, 829 P.2d 1099 (1992).

Under the sexually violent predator statutes, the State first files a petition alleging that a person is a sexually violent predator. RCW 71.09.030. The court then determines, under RCW 71.09.040, whether probable cause exists to believe that the person named in the petition meets the statutory definition of a sexually violent predator. Then, under RCW 71.09.050 and .060, either a jury or a court determines whether the person named in the petition is a sexually violent predator beyond a reasonable doubt.

■■■ Contrary to Ross' contention that the State must demonstrate that the person named in the petition did not, in good faith, volunteer for treatment before the court determines that probable cause exists that the person is a sexually violent predator, the failure to do so does not violate due process. Before being found a sexually violent predator, a detainee has not only committed or been charged with a sexually violent offense, a unanimous jury or court has found beyond a reasonable doubt that the detainee suffers from a mental abnormality that renders him a danger to the community. *See* RCW 71.09.020(16) (a sexually violent predator suffers from a mental abnormality or personality disorder that makes him likely to engage in a predatory act of sexual violence if not confined in a secure facility).

Secondly, as noted earlier, a sexually violent predator, by statutory definition and as expressed in legislative findings, has a high likelihood to commit predatory acts of sexual violence. Treatment is necessary regardless of whether the sexually violent predator volunteers. To require the State to prove that a person detained as a sexually violent predator has volunteered for treatment would minimize the seriousness of the finding that the detainee is a sexually violent predator. Of course, that the person has volunteered for treatment is admissible evidence on his behalf concerning

his status as a sexually violent predator, but it is not a part of the statute nor is it any part of the State's burden.

Finally, voluntary treatment would restrict the State's ability to monitor and confine the detainee, who is at a high risk to reoffend. This restricted ability would not only prevent the violent predator detainee from receiving proper recovery treatment but would also place society at risk. *See* RCW 71.09.060(3) (requires that a sexually violent predator be detained in a secure facility and not on the grounds of any state mental facility, even temporarily). Offering voluntary treatment before determining that a detainee is sexually violent would allow the potentially sexually violent predator an opportunity to reoffend while undergoing voluntary treatment, a risk involuntary intensive inpatient treatment substantially reduces. Thus, voluntary treatment is not well suited where a detainee has committed or has been charged with a sexually violent offense and has a mental abnormality or personality disorder that makes him likely to engage in predatory acts of sexual violence if not contained. *See Davis*, 109 Wn. App. at 743 (due process protection not violated when a person is involuntarily committed because he is a danger to the community).

 We hold that the definition of a sexually violent predator, the probable cause hearing, and the reasonable doubt burden of proof adequately protects a sexually violent predator's liberty interest, both procedurally and substantively. Thus, Ross' due process claim fails.

Affirmed.

HUNT, C.J., and SEINFELD, J., concur.

Review denied at 149 Wn.2d 1015 (2003).